Edward Chen (SBN #312553)
echen@edchenlaw.com
**LAW OFFICES OF EDWARD CHEN**
1 Park Plaza, Suite 600
Irvine, CA 92614
Telephone: (949) 287-4278
Facsimile:  (626) 385-6060

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD CHEN,<br><br>                    Plaintiff,<br><br>         v.<br><br>YK LAW LLP, f/k/a/ MEI & WEINER LLP a New York limited liability partnership; YONGYUAN LI, a/k/a/ HENRY LI; JESSE JULES WEINER; XIANGRONG MEI; and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No. 8:21-cv-02032<br><br>**COMPLAINT**<br><br>1. **Breach of Contract**<br>2. **Breach of the Covenant of Good Faith and Fair Dealing**<br>3. **Defamation**<br>4. **Accounting**<br><br>DEMAND FOR JURY TRIAL |

## I.  INTRODUCTION

1.  Plaintiff Edward Chen brings this lawsuit to recover damages and compensation for breach of contract, breach of the implied covenant of good faith and fair dealing, defamation, and accounting arising from and relating to Plaintiff's employment with Defendant YK Law LLP (hereinafter "YK Law" or the "Firm") and seeks to recover damages representing the payment of fees and compensation that have been wrongfully withheld from Plaintiff.

2.  Despite the Firm's consistent efforts in marketing itself as a firm that has ties with the "largest law firm in China", that is, the Yingke Law Firm, the actions of the Firm and the individual named defendants herein are not indicative of a firm that one would come to expect being in such close relation with thereto.  Indeed, the actions of the Firm are beyond xiǎo qì[1] and the individually named defendants can only be described as being xiǎo rén[2].

3.  This case arises from Defendants' purported termination of Plaintiff's employment as a partner of the Firm and for the Firm's blatant efforts and attempts to cause harm and damage to Plaintiff by breaching and otherwise failing to adhere to the terms of an employment agreement between the parties.

4.  The Firm's unabashed refusal to comply with the terms of the employment agreement and continued refusal to pay Plaintiff the monies that are owed and currently have caused significant harm and injury to Plaintiff.

## II.  PARTIES

5.  Plaintiff Edward Chen is, and at all times relevant herein was, an individual residing in the State of California and within this judicial district.

---

[1] 小气, (https://translate.google.com/?sl=en&tl=zh-CN&text=stingy&op=translate)

[2] 小人, (https://translate.google.com/?sl=zh-CN&tl=en&text=%E5%B0%8F%E4%BA%BA&op=translate&hl=en)

6. Defendant YONGYUAN LI a/k/a/ HENRY LI ("Li") is, and at all times relevant herein was, an individual citizen of the People's Republic of China residing in the State of California within this judicial district.

7. Defendant JESSE JULES WEINER is, and at all times relevant herein was, an individual citizen residing in the State of New York. Notably, Defendant Weiner holds himself out to be a "co-managing partner" of the Firm, yet there is no indication on the firm's website as to any other individual who shares the management responsibilities with Defendant Weiner.

8. Defendant XIANGRONG MEI is, and at all times relevant herein was, an individual citizen of the People's Republic of China residing therein.

9. Upon information and belief, Defendant YK Law LLP is, and at all times relevant herein was, a New York limited liability partnership validly existing and formed under the laws the of the State of New York. Upon further information and belief, the Firm was originally formed under the name MEI & WEINER, LLP.

10. Plaintiff is informed, believes, and thereon alleges that Defendant Li was, at all relevant times, and remains, a "co-managing partner" of the Firm or otherwise holds a partnership interest in equity of the Firm. Further, Plaintiff is informed, believes, and thereon alleges that Defendant Li's status as a "co-managing partner" of the Firm is purposefully hidden from the public so as to not alert the same to the impropriety of a non-US licensed attorney, such as Defendant Li, having a partnership interest in a U.S. based law firm.

11. Plaintiff is further informed, believes, and thereon alleges that Defendant Mei invalidly holds a partnership interest in equity of the Firm despite the fact that Defendant Mei is a non-US licensed attorney. Defendant Li and Defendant Mei are, upon information and belief, partners having equity ownership in the firm, and along with Defendant Weiner, consist of the Firm's management.

12. Plaintiff is informed, believes, and thereon alleges that at all relevant times mentioned herein, all Defendants, and each of them, were the officers, directors, brokers, agents, contractors, advisors, servants, partners, joint ventures, employees, and/or co-conspirators of their Co-Defendants and were acting within the scope of their authority as such agents, contractors, advisors, servants, partners, joint venturers, and employees with the permission and consent of their Co-Defendants.

13. The identities and capacities of Defendants DOES 1 through 10 are presently unknown to Plaintiff, and on this basis, Plaintiff sues these defendants by fictitious names. Plaintiff will amend the complaint to substitute the true names and capacities of the DOE Defendants when they are ascertained. Plaintiff is informed, believes, and thereon alleges that DOES 1 through 10 are, and were at all times relevant to this action, employees and/or agents of Defendants and are responsible for the acts and omissions complained of herein.

### III.     JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332 based upon the grounds that the amount of damages sought is in excess of $75,000 and because Plaintiff does not share citizenship with any of the named Defendants. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because all of the claims alleged herein form part of the same case or controversy.

15. This Court has both specific and general personal jurisdiction over the named Defendants because each of the named Defendants maintains minimum contacts with the United States, this judicial district, and this state. Each of the Defendants purposefully availed themselves of the laws of this state by conducting a substantial amount of its business in this state, including the maintenance of several office locations and workspaces within this state, and particularly within this judicial district.

16. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

### IV.   FACTUAL ALLEGTIONS

17. In September 2020, Plaintiff joined the firm as a "Senior Counsel" pursuant to an offer of employment agreement that serves as the basis for this case. A true and correct copy of this agreement is included herewith as **"Exhibit A"**.

18. Under the agreement, the term of Plaintiff's employment with the firm was to extend through December 31, 2021 with a change in position and title to a "contract partner" beginning on January 1, 2021.

19. Plaintiff's compensation was to be determined by what is more commonly known as an "eat-what-you-kill"-type compensation arrangement, wherein Plaintiff would receive a revenue draw equaling 30% of the total cash receipts collected from matters originated by Plaintiff, 35% of the total cash receipts collected by Plaintiff working as a timekeeper, and 20% of the time billed by associates and paralegals while working under the direct supervision of Plaintiff.

20. Section 13 of the agreement provided the terms and mechanisms for termination of the agreement, which is of key importance here given the Firm's failed attempt to terminate Plaintiff and the named Defendant's inability to recognize the fact that Plaintiff is not an employee of the Firm.

21. Given the clear language and terms of the parties' agreement, termination of such agreement was to be effectuated by and pursuant to section 13 only. Yet despite this clear and unequivocal language, Defendants breached the agreement by failing to provide any notice required by the agreement and by subsequently refusing to act in accordance with the terms of the agreement.

22. On or around November 16, 2021, Defendant Weiner met with Plaintiff and attempted to terminate Plaintiff's employment with the firm. During this meeting, Plaintiff advised Defendant Weiner

that such attempted termination was improper and in violation of the parties' agreement. Plaintiff further suggested that the Firm prepare a notice of termination of the agreement and that Plaintiff would be willing to waive the written notice requirements pursuant to the parties' agreement. Defendant Weiner did not agree to this and wrongfully and unreasonably doubled down on the position that Plaintiff could be "terminated" at-will as an employee of the Firm.

23. Defendant Weiner's actions and beliefs were clearly not rooted in any law, nor does it appear that the Firm or any of the named Defendants had any knowledge or ability to comprehend what exactly it was that they were attempting to do. This is clearly evident by the fact that even if Defendants' purported "at-will" termination of Plaintiff's "employment" with the Firm were valid, Defendants failed to comply with their legal and statutory obligations to provide Plaintiff with a final paycheck constituting all unpaid wages and other compensation. Indeed, Defendants did not provide any such payment despite having allegedly terminated Plaintiff's employment with the Firm.

24. At the same meeting, Plaintiff posited the question to Defendant Weiner that if it were an actual termination, then Plaintiff would clearly be entitled to a final paycheck consisting of unpaid wages and compensation. Defendant Weiner was unable to provide such, claiming that certain "deductions" would need to be taken into account prior to issuance of such final paycheck to Plaintiff.

25. To date, Defendants have failed to remit any such final paycheck or final payment to Plaintiff.

26. Shortly after the meeting, Plaintiff's access to the firm's e-mail accounts and the firm's case management program were shut off. Defendants failed to abide by any of the terms of the parties' agreement concerning termination of Plaintiff's independent contractor's agreement with the Firm. Specifically, Defendants willfully and unjustifiably failed to abide by section 13 of the offer letter that requires 30 days written notice to terminate the parties' agreement.

27. By abruptly cutting off access to Plaintiff to the firm's e-mails and other resources, Defendants' maliciously intended to cause harm and damage to Plaintiff, and Plaintiff was not afforded any of the basic partnership courtesies and any sense of basic decency in the handling of a partner withdrawal from the Firm.

28. More egregiously, Defendants' disparate treatment of Plaintiff by the purported termination is vastly different than Defendants' treatment of similar partners with similar contracts to Plaintiff. As an example, one white, straight male partner that experienced similar issues as Plaintiff and was ultimately asked to leave the Firm was permitted the full 30 days' notice period prior to that partner's departure of the firm.

29. Defendants' unlawful conduct was engaged in and/or ratified by managing agents of Defendants, in whom Plaintiff placed his fully justified, good faith trust in. Defendants acted in a deliberate, malicious, cold, callous, deceptive, oppressive, and intentionally harmful manner in order to injure and cause damage to Plaintiff with a callous disregard for Plaintiff's right to be free from discrimination and retaliation in the workplace.

30. Defendants' purported termination of Plaintiff's employment and outrageous and discriminatory conduct towards Plaintiff has irreparably harmed and disrupted Plaintiff's life and career. As a result of Defendants' unlawful conduct and the actions as alleged herein, Plaintiff has and continues to suffer from significant emotional distress.

31. Additionally, Plaintiff is informed and believes and hereupon alleges that Defendants' have acted with a reckless disregard to Plaintiff's reputation as an attorney, by making false and defamatory statements regarding Plaintiff's performance as an attorney to individuals both inside and outside of the Firm. Defendants, acting by and through Defendant Weiner, have made, and continue to make false

defamatory statements to Plaintiff's clients and other firm clients in an effort to cause irreparable harm to Plaintiff's reputation.

32.    Specifically, Plaintiff is informed and believes and hereupon alleges that Defendants, particularly Defendant Li, engaged in the conduct of repeatedly making false and defamatory statements to members of the legal community, both inside and outside the Firm, concerning Plaintiff's job performance and the circumstances of Plaintiff's purported termination, including, *inter alia*, express and implied accusations relating to Plaintiff's competence in handling matters where Plaintiff was lead attorney, and unsubstantiated comments regarding Plaintiff's alleged poor performance.  These and similar false statements published by Defendant Li and the other named Defendants expressly and impliedly asserted that Plaintiff is and/or was unprofessional and unsuccessful as an attorney and partner of the Firm.  These false and defamatory statements were unsolicited, untrue, and made with actual malice and the intent to cause reputational harm and did indeed cause such harm to Plaintiff.

33.    In addition to the false, misleading, and defamatory statements made by Defendants, Plaintiff has been harmed by the substantial and severe invasion of privacy and public disclosure of private facts that Defendants have committed.  Plaintiff is informed, believes, and hereupon alleges that Defendants, namely Defendant Li, acted maliciously and with willful disregard of Plaintiff's right to privacy by routinely opening private mail addressed privately to Plaintiff.  Defendant Li and the named Defendants did so in an attempt to obtain private facts about Plaintiff that Defendants knew would cause harm to Plaintiff should such facts have been disclosed to the public.  Regardless, Defendants acted in conscious disregard to Plaintiff's privacy rights in an attempt to attack Plaintiff's reputation and cause significant harm to Plaintiff.

34.    Plaintiff further believes, and alleges upon information and such belief, that Defendants' operation and structure as a law firm is improper and constitutes a significant violation of the rules of

professional conduct for both the State of California and State of New York. This includes, namely, the fact that the firm's partners include nonlawyer individuals in violation of both states' rules prohibiting the sharing of business equity with nonlawyers.

35. Upon further information and belief, Defendant Li and Defendant Mei, both of whom are citizens of the People's Republic of China and are not licensed as attorneys by any bar association within any of the 50 states in the United States, hold interests in equity and in the form of being a partner in the firm's partnership.

36. As a consequence of Defendants' breach of the employment agreement by, among other things, failing to provide the requisite notice of termination of said agreement, failure to pay all monies due to Plaintiff pursuant to the employment agreement, and for the wrongful acts as alleged herein, Plaintiff has been harmed and damaged in an amount to be proven at trial.

## V. CLAIMS FOR RELIEF

### COUNT 1
### BREACH OF CONTRACT
### (Against All Defendants)

37. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

38. Plaintiff entered into a written contract with the Firm, which includes each and every one of the named Defendants.

39. In order to terminate the agreement, written notice in advance of 30 days is required. Despite this, Defendants attempted to terminate Plaintiff as an "employee" of the firm under a mistaken belief that Plaintiff could be terminated "at-will" as a result thereof.

/ / /

/ / /

40. Defendants breached the terms of the agreement, specifically, in regard to the specified method for termination of the agreement. Defendants attempt to cause the termination of Plaintiff was unjust and invalid pursuant to the terms of the agreement.

41. In breach of the express terms of the contract, Defendants also failed its obligations under the contract by closing, suspending, or otherwise shutting off access to the Firm's resources, including e-mail, file system and documents, and case management software.

42. Furthermore, Defendants' breach includes the failure to remit payment rightfully owed and due to Plaintiff under the terms of the agreement. To date, Plaintiff has yet to receive payment from Defendants in an amount to be proven at trial, but well in excess of over $75,000.

43. As a direct and proximate result of Defendants' breach of contract, Plaintiff has been damaged in an amount to be determined at trial. More egregiously, Defendants' breaches have caused, and continue to cause damage to clients of the Firm as Plaintiff has been unable to tend to such matters as a result of Defendant's closure of Plaintiff's access to same.

## COUNT 2
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
**(Against All Defendants)**

44. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

45. Plaintiff's offer letter and written contract with Defendants is an enforceable contract under California law. A covenant of good faith and fair dealing is implied in the agreements and contracts entered into by and between Plaintiff and Defendants.

46. The covenant of good faith and fair dealing required Defendants to fairly, honestly, and reasonably perform the terms and conditions of the offer letter and written contracts.

47. Defendants breached the covenant of good faith and fair dealing with Plaintiff in several ways, including: (1) Defendants' refusal to pay Plaintiff's wages owed under the offer letter and written contracts; (2) Defendants' failure to provide administrative, secretarial, and associate attorney support to Plaintiff in accordance with the terms of the offer letter and written contracts; Defendants' attempt to terminate Plaintiff's employment by treating Plaintiff as an employee for purposes of "at-will" termination, despite the terms of the offer letter and written contracts that required and provided for a 30-day notice of termination of the offer letter and written contracts; and (4) Defendants' unjustified repudiation of the obligations under the offer letter and written contracts, despite having full knowledge and awareness of the applicable law, for reasons extraneous to the contracts, and for the purpose of frustrating Plaintiff's enjoyment and benefits derived from the offer letter and written contracts.

48. As a proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiff has been damages, in that Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at trial.

**COUNT 3**
**DEFAMATION**
**(Against All Defendants)**

49. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

50. Plaintiff is informed and believes Defendants by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited internal and external publications of defamation, of and concerning Plaintiff, to third persons and to the community. These false and defamatory statements included express and implied accusations that Plaintiff performed poorly, exhibited unprofessional conduct, and committed errors in strategy or judgment for matters which Plaintiff was lead attorney on.

51. While the precise dates of these publications are not currently known to Plaintiff, Plaintiff is informed and believes the publications started in or around June of 2021, for the improper purpose of finding a justification for Plaintiff's wrongful termination. These publications were outrageous, negligent, reckless, intentional, and maliciously published and republished by Defendant. Plaintiff is informed and believes that the negligent, reckless, and intentional publications by Defendant were and continue to be foreseeably published and republished by Defendant, its agents and employees, and recipients in the community. Plaintiff hereby seeks damages for these publications and all foreseeable republications discovered up to the time of trial.

52. During the above-described timeframe, Defendants conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom Defendants published such defamatory statements are believed to include, but are not limited to, other partners, agents and employees of Defendants and the community, clients, all of whom are known to Defendant, but unknown at this time to Plaintiff.

53. The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation. These publications included the following false and defamatory statements (in violation of California Civil Code §§ 45 and 46(3)(5)) with the meaning and/or substance that Plaintiff: exhibited unprofessional conduct or otherwise performed poorly as lead counsel on matters which Plaintiff was handling. These and similar statements published by Defendants expressly and impliedly falsely assert that Plaintiff is an unprofessional, unsuccessful, and incompetent attorney.

54. Plaintiff is informed, believes and fears that these false and *per se* defamatory statements will continue to be published by Defendants and will be foreseeably republished by its recipients, all to

the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable republications, including his own compelled self-publication of these defamatory statements.

55. The defamatory meaning of all of the above-described false and defamatory statements, and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendant, but unknown to Plaintiff at this time.

56. None of Defendant's defamatory publications against Plaintiff referenced above are true.

57. The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

58. Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants, to cause further damage to Plaintiff's professional and personal reputation, to cause him to be fired, and to justify his firing.

59. Each of these publications by Defendants were made with knowledge that no investigation supported the unsubstantiated and obviously false statements. Defendants published these statements knowing them to be false, unsubstantiated by any reasonable investigation, and the product of hostile witnesses. These acts of publication were known by Defendants to be negligent to such a degree as to be reckless. In fact, not only did Defendants have no reasonable basis to believe these statements, but

Defendants also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendants excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

60. The above complained-of publications by Defendants were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, employment and employability. Defendants published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect any Defendants from liability for any of these aforementioned publications or republications.

61. As a proximate result of the publication and republication of these defamatory statements by Defendants, Plaintiff has suffered injury to his personal, business, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

62. Defendants committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of Defendants, their agents, and employees, herein alleged were known, ratified and approved by Defendants. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants for these wanton, obnoxious, and despicable acts in an amount according to proof at time of trial.

/ / /

/ / /

## COUNT 4
## ACCOUNTING
### (Against All Defendants)

63. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

64. A relationship exists between Plaintiff and Defendants for which an accounting of the Firm's books and records is appropriate.

65. Plaintiff is informed, believes, and based thereon alleges that the Firm has derived and received significant legal fees in which Plaintiff is contractually entitled to a share thereof. Plaintiff is entitled to a full and accurate accounting of all proceeds generated from, by or in connection with the matters originated by Plaintiff, matters where Plaintiff was to derive a portion of fees for work conducted as lead attorney on various legal matters, and any and all other fees owed and due to Plaintiff in accordance with Plaintiff's employment agreement.

66. The total amount of monies owing and due to Plaintiff is currently unknown and cannot reasonably be determined or ascertained without a full and complete accounting of the Firm's books and records.

67. Plaintiff also prays for the Court to impose a constructive trust on all moneys wrongfully withheld by the Firm from Plaintiff.

**PRAYER FOR RELIEF**

68. WHEREFORE, Plaintiff prays for the requested relief as follows:

   A. For damages for breach of contract sufficient to restore to Plaintiff the bargained-for benefits of the contract;

   B. For compensatory damages including lost wages, earnings, retirement benefits, and other employee benefits; and all other sums of money, together with interest on these amounts at prevailing rates and according to proof;

C. For general, special, and incidental damages and amounts for emotional and physical distress according to proof;

D. For injunctive relief;

E. For punitive damages in an amount to be determined at trial sufficient to punish, penalize and/or deter Defendants;

F. For prejudgment interest and interest on the sum of damages awarded to the maximum extent permitted by law;

G. For reasonable attorneys' fees and costs of suit herein incurred; and

H. For such other and further relief as the Court deems proper and any such other or further relief as may be appropriate under federal or state law, or at equity.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Dated: December 9, 2021                           By: /s/ *Edward Chen*
                                                      Edward Chen

                                                      *Attorneys for Plaintiff*