# Exhibit A




New York | Los Angeles | Irvine

WWW.YKLAW.US

September 10, 2020

Edward Chen
1 Park Plaza
Irvine, CA 92614

Dear Edward,

This letter agreement will serve to set forth the basic terms of our mutual agreement and understanding concerning your relationship with YK Law LLP ("YK" or the "Firm").

1. **Relationship with the Firm**. Effective as of September 14, 2020 (the "Commencement Date"), you will join the Firm as a senior counsel. Your relationship with the Firm shall be governed by the terms and conditions of this agreement. It is our mutual expectation that you will, in good faith, assist us in further developing our practice and make good faith efforts to bring additional clients to the Firm.

2. **Term of Agreement**. Unless otherwise agreed, the term of this agreement shall commence on the Commencement Date and shall continue through and including December 31, 2020 (the "Initial Term"). Unless this agreement shall be sooner terminated, upon the expiration of the Initial Term, we shall discuss in good faith the continuation or modification of this agreement for an additional one-year term through December 31, 2021 (together with the Initial Term, the "Term"), including changing your position with the Firm to that of a contract partner starting on January 1, 2021. For the avoidance of confusion, following the expiration of the Initial Term, your relationship with the Firm shall continue to be governed by the terms of this Agreement on a month-to-month basis unless otherwise modified by the execution of a subsequent agreement.

3. **Compensation**. Throughout the Initial Term, you shall be entitled to receive compensation as follows:

**REVENUE DRAW**

For any amount of Cash Receipts collected by the Firm as a result of your work or clients, you shall be entitled to a draw (the “Revenue Draw”) which will be equal to the following:

a) 30% of the total Cash Receipts collected from matters originated by you (regardless of the timekeeper); plus,

b) 35% of the total Cash Receipts collected by you working as timekeeper (regardless of the originator);

In addition, of the total Cash Receipts collected for the time billed by associates and paralegals while working under your direct supervision, you shall receive 20%.

For the purpose of this Section, “Cash Receipts” shall mean the actual, net legal fees paid by the relevant clients to the Firm with deduction for all expenses and costs paid by the Firm which are directly associated with the matter (such as governmental fees, travel and accommodation which are not reimbursed by the client, or referral fees paid for such client/matter).

Joint Collected Originations may be shared when there are Joint Clients. For such purpose:






"Joint Clients" shall mean clients of the Firm that are generated or originated by a substantial and material contribution by both you and someone else associated with the Firm and identified on the books of the Firm as having a defined shared originations credit rule and/or agreement.

"Joint Origination Credit Agreement" shall mean a defined originations credit rule and/or agreement that is recorded on the books of the Firm providing for shared origination credit between you and one or more other partners of the Firm expressed in terms of a percentage of origination credit

"Joint Collected Originations" shall mean for each Joint Client, that portion of legal fees actually received by and applied on the books of the Firm during the relevant period as payment for time previously billed to a Joint Client for work performed by attorneys of the Firm other than you and any other partner who shared origination credit for the Joint Client times your respective share of origination credit as defined in the Joint Origination Credit Agreement for that Joint Client. Failure to obtain a Joint Origination Credit Agreement in writing and recorded on the books of the Firm will result in no allocation of the Joint Collected Originations to you.

Subject to your compliance with all Firm policies regarding time and billing, your Revenue Draw shall be paid in arrears by no later than the 15th business day after the end of each month.

Notwithstanding the foregoing, for purposes of facilitating the transition of all of your existing clients and current matters to the Firm, we agree that Cash Receipts collected during the first 30 days after the Commencement Date from such current matters transitioned to the Firm will be 100% for your account, provided, that such matters will not require the material involvement of or contribution by other lawyers, paralegals or timekeepers (other than you) or resources of the Firm.

**BONUS**

Discretionary Bonus. In addition to the Revenue Draw, you may receive a bonus (the “Discretionary Bonus”). The Discretionary Bonus, if any, will be in such amounts as YK may determine in its absolute discretion, but the factors upon which such bonus shall be based are: productivity (including effective delegation of work to other lawyers and paralegals, which will increase efficiency and lead to the development of the newer members of the Firm; and the results of successful marketing and client retention efforts), quality of professional effort (including a broad, encompassing notion of professional competence in one’s practice and good practice management, and the attending to all of the day-to-day tasks, spending one’s time wisely, organizing and managing projects effectively, tending to accurate timekeeping and billing, and complying with all firm administrative policies and priorities), and leadership.(including demonstrated effectiveness in promoting the objectives of the firm as a whole).

You further agree that:

a) Notwithstanding any other terms set forth in this agreement, except as may be otherwise agreed herein, you shall not be entitled to any compensation under this agreement for legal fees received by the Firm for work performed before the Commencement Date, regardless of whether such fees are received by or applied on the books of the Firm after the Commencement Date.

b) Billing delays caused by your failure to enter time as provided herein or otherwise comply with the Firm's timekeeping and billing procedures shall constitute grounds for the withholding of the Monthly Draw and any Additional Draw until billing is complete.






c) The Firm will provide the following reports: (i) a written statement of legal fees received by and applied on the books of the Firm during the prior three months for Your Clients and any Joint Clients or YK Clients for which you are identified on the books of the Firm as the "originating" attorney; (ii) a written statement of legal fees received by and applied on the books of the Firm during the prior three months for your billable time. You shall be solely responsible for ensuring that origination credit is accurately reflected on the books of the Firm and that payments by clients are accurately applied in payment of bills previously issued to clients.

d) You shall not have authority to write-down any such fees of more than Ten Percent (10%) without the prior written approval of the timekeeper and the Firm.

e) As a counsel, you will devote your full time and attention to the business of the Firm. No active employee of the Firm may engage in the practice of law or conduct other Firm business under any other firm name.

4. **Contingency or Success Fee Engagements**. Notwithstanding the foregoing, unless otherwise agreed to in a writing signed by you and a Managing Partner, you shall not have the authority to enter into any engagement on a contingent or success-fee basis without the prior approval of a Managing Partner.

5. **Time Keeping**. You shall daily record all time which you expend working for all clients in a tenth of an hour increment in the form used by the Firm. Time shall be recorded no less frequently than weekly, and all time entries for a calendar month must be submitted no later than one business day after the end of such calendar month. You are responsible for entering your time directly into the Firm's timekeeping system. You shall be primarily responsible for all timekeeping and billing for Your Clients. You shall monitor all timekeepers working on Your Clients for compliance with Firm timekeeping and billing policies, including the issuance of bills on or before the 10th day after the end of each month. You and the Firm hereby acknowledge that time entry and billing support in accordance with this paragraph is a material term of this contract and that as to the entry of time and billing support, time is of the essence.

6. **Billing**. It is understood that all your billing for Your Clients will be billed and invoiced solely by the Firm. You are primarily responsible for ensuring compliance with all applicable Firm policies concerning conflicts of interest and new client matter intake. You shall be responsible for reviewing, editing, and issuing bills to Your Clients for all work performed by you no later than the 10th day of the month following the month in which work is performed, including but not limited to accurately instructing the accounting department in writing of how payments should be applied. You shall assist in all respects with the collection of bills issued to any client for which you perform work. You hereby acknowledge that billing in accordance with this paragraph is a material term of this contract and that as to the timely issuance of bills, time is of the essence.

7. **Insurance Coverage**. During the Initial Term of this Agreement and any subsequent term thereafter, you will be entitled to (i) be covered by the Firm' s professional liability insurance policy (which shall be in effect at the soonest practicable time), and (ii) if you so elect, it to be individually covered by the Firm's medical and dental plan (to be in effect within 90 days of the Commencement Date).

8. **Benefits**. Your compensation package will include participation in any 401(k) profit sharing plan (for which you will not qualify for entry until you have completed one year of employment with the Firm) and any other benefit plans of the firm then in effect for employees of the Firm pursuant to their terms. The Firm may amend or discontinue the benefit plans from time to time. You may contact the Firm's office administrator to ask questions about or obtain copies of our current benefit plans.






9. **Firm Resources**. During the Term you shall have use of and access to the Firm's resources, including an office in Irvine, telephone, emails, and general administrative support; provided, however, that your office and other resources may be moved and/or modified based on Firm needs. Please note that the Firm has currently closed its Irvine office due to COVID-19 pandemic and its reopening will be subject to further notice.

10. **Rider**. A rider, if annexed hereto, is incorporated herein and binding as between you and the Firm as if fully set forth herein.

11. **Compliance with Law and Firm Policies**. You hereby agree to fully comply with (i) all applicable laws, regulations, and rules; and (ii) all Firm policies, including but not limited to Firm policies regarding timekeeping, billing, sexual harassment, etc. You acknowledge that compliance by you with the foregoing is a condition to the payment of all compensation pursuant to this Agreement.

12. **Taxation**. The Firm will make reasonable efforts to accommodate your desires with respect to the reporting to any tax authorities of compensation paid to you. Notwithstanding the foregoing, you hereby agree to cooperate in good faith to the extent the Firm elects to report compensation paid to you in reliance on advice of its accountants and/or CPAs.

13. **Termination**. Following the Commencement Date, either you or the Firm may terminate this agreement upon thirty (30) days' written notice. In the event of any such notice of termination, you shall not be permitted to open new matters at the Firm. In addition, in the event of such notice of termination, you agree that (i) you shall immediately cease and thereafter refrain from holding yourself out as a partner, of counsel, or associate of the Firm, (ii) you shall be responsible in all respects for the transfer of your practice away from the Firm; and (iii) you shall not solicit any clients of the Firm who are not Your Clients or YK Clients originated by you until such time as you have registered a new office and/or address location with any bar association or other authority with jurisdiction over your practice and otherwise established a law practice at another firm and/or location. For purposes of the foregoing sentence, the Firm's obligations under this agreement shall terminate as of the date of the notice and the Firm shall have no responsibility to provide to you any office space, computer or network access, email service, or professional liability insurance, all of which shall become your sole responsibility. To the extent the Firm provides any of the foregoing to you in connection with the transfer of your practice away from the Firm, doing so shall be deemed merely a professional courtesy and shall not constitute a waiver of termination or otherwise give rise to any obligation by the Firm. In connection with the transfer of your practice away from the Firm, you shall promptly provide to a Managing Partner, or such other partner designated by the Managing Partner, a list of all matters for which you are providing or have provided legal services, clearly setting forth the originating and all other attorneys who worked on the matter, the status of each matter, the work and/or tasks remaining to be completed, copies of engagement letters, the location of all files, and all potential deadlines. The foregoing portion of this provision shall be interpreted consistent with the Rules of Professional Conduct, including Rule 5.6, or any analogous provision under local law, so as to not prevent any client from seeking the legal services of either you or the Firm; provided, however, that in the event you elect to cease practicing law at or after termination, you agree to not solicit any client of the Firm in connection with any other business relationship for a period of two years following termination. Both you and the Firm further agree that for a period of two years following the notice of termination, the other party shall not in any manner disparage or defame the Firm, the Partners, or any other member or associate of the Firm on the one hand, or you on the other hand.

Nothing in this Section shall relieve the Firm from any payment obligations to you during the 30-day notice period and any amounts accrued but unpaid until the effective date of termination; provided, however, that any payment obligations of the Firm during such notice period are strictly limited to amounts owed to you under Paragraph 3, which are acknowledged to be payable only from amounts received by the Firm and applied on its






books during the 30-day notice period, and further provided that upon the expiration of the 30-day notice period the Firm shall have no other payment obligations to you.

**14. Miscellaneous**

a) This agreement has been entered into and shall be governed by the laws of the State of California without reference to conflicts of laws principles; provided, however, that any part of this agreement relating to professional obligations shall be governed by the rules of the jurisdiction with relevant oversight over such professional obligations.

b) Nothing in this Agreement is intended to create a legal partnership between you, YK, or other legal entity.

c) In the event of any dispute between the parties under or with respect to this Agreement (a "Dispute"), the parties shall submit such Dispute to JAMS, or its successor, for mediation, and if the matter is not resolved through mediation, then it shall be submitted to JAMS, or its successor, for final and binding arbitration. Either party may commence mediation by providing to JAMS and the other party a written request for mediation, setting forth the subject of the dispute and the relief requested. The parties will cooperate with JAMS and with one another in selecting a mediator from the JAMS panel of neutrals and in scheduling the mediation proceedings. The parties agree that they will participate in the mediation in good faith and that they will share equally in its costs. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the parties, their agents, employees, experts and attorneys, and by the mediator or any JAMS employees, are confidential, privileged and inadmissible for any purpose, including impeachment, in any arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation. Upon an unsuccessful conclusion of the mediation, either party may initiate arbitration with respect to the matters submitted to mediation by filing a written demand for arbitration at any time following the conclusion of the initial mediation session or at any time following sixty 60 days from the date of filing the written request for mediation, whichever occurs first ("Earliest Initiation Date"). The mediation may continue after the commencement of arbitration if the parties so desire. At no time prior to the Earliest Initiation Date shall either side initiate an arbitration or litigation related to this Agreement except to pursue a provisional remedy that is authorized by law or by JAMS Rules or by agreement of the parties. However, this limitation is inapplicable to a party if the other party refuses to participate in good faith or share costs equally. All applicable statutes of limitation and defenses based upon the passage of time shall be tolled until 15 days after the Earliest Initiation Date. The parties will take such action, if any, required to effectuate such tolling. Arbitration of any Dispute shall be conducted pursuant to the JAMS Streamlined Arbitration Rules & Procedures. The venue for any mediation and/or arbitration and/or litigation shall be Los Angeles County.

d) This Agreement constitutes the entire contract between the parties hereto with regard to the subject matter hereof. This Agreement supersedes any other agreements, representations or understandings (whether oral or written and whether express or implied) that relate to the subject matter hereof.

e) This Agreement may be executed in one or more counterparts each of which shall be deemed to be an original and all of which when taken together shall be deemed to be one and the same instrument. Facsimile or electronic signatures shall have the same meaning and legal effect as ribbon original signatures.

f) The failure of the Firm or you to enforce at any time or for any period any of the provisions of this Agreement shall not be construed to be waiver of those provisions or of the right of the Firm or you thereafter to enforce each and every provision hereof.




New York | Los Angeles | Irvine

WWW.YKLAW.US

******

If the foregoing accurately reflects our mutual agreement and understanding, please so indicate by executing and returning a copy of the agreement in the space provided below. We look forward to your association with the Firm.

Very truly yours,

YK Law

______________________
YK Law LLP

ACCEPTED AND AGREED TO:

______________________
Name: Edward Chen
Date: Sep 15, 2020