Edward Chen (SBN 312553)
echen@edchenlaw.com
**Law Offices of Edward Chen**
17800 Castleton St. Suite 338
City of Industry, CA 91748
Telephone: (949) 241-7097

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD CHEN,<br><br>Plaintiff,<br><br>v.<br><br>YK LAW LLP, a New York limited liability partnership; YONGYUAN LI, a/k/a/ HENRY LI; JESSE JULES WEINER; XIANGRONG MEI; YANG LIN a/k/a/ LINDA YANG; CHAN TANG a/k/a/ LINDA TANG; SCOTT KALIKO; YEN MING LIAO a/k/a/ IAN LIAO; JIANNAN ZHANG; JULIAN HAFFNER; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 8:21-cv-02032-DOC (ADSx)<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. **BREACH OF CONTRACT**<br><br>2. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>3. **DEFAMATION**<br><br>4. **ACCOUNTING**<br><br>5. **VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 *et seq.*)**<br><br>6. **VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500 *et seq.*)**<br><br>7. **CIVIL RICO (18 U.S.C. § 1962 *et seq.*)**<br><br>**JURY TRIAL DEMANDED** |

1

## I.   INTRODUCTION

1.      As the world's oldest and greatest democracy, the United States has been at the forefront as being the strongest exponent of the rule of law.  This rule of law comes in stark contrast to the "rule by law" system imposed by China and the Chinese Communist Party (CCP).  As FBI director Christopher Wray recently stated, "[t]he greatest long-term threat to our nation's information and intellectual property, and to our economic vitality, is the counterintelligence and economic espionage threat from China."[1]

2.      This case involves Defendant YK Law, LLP, a New York law firm posing as a legitimate law firm despite having improper non-lawyer ownership and non-lawyer partners and involves a scheme to defraud by aiding and abetting the unauthorized practice of law.

3.      This case also sheds light on the ever-increasing threat from Communist China and the CCP and shows the dangers and repercussions that occur when those who have committed their allegiance to the CCP and act under the guise and protections of the United States and its rules of law.

4.      As alleged herein, Defendants are engaged in a racketeering scheme by which they knowingly and actively aid and abet the unauthorized practice of law in an effort to obtain an unfair and unlawful advantage over a specific portion of the legal market.

5.      Plaintiff Edward Chen brings this lawsuit to recover damages and compensation for breach of contract, breach of the implied covenant of good faith and fair dealing, defamation, and accounting arising from and relating to Plaintiff's employment with Defendant YK Law LLP (hereinafter "YK Law" or the "Firm") and seeks to recover damages representing the payment of fees and compensation that have been wrongfully withheld from Plaintiff.

---

[1] Wray, Christopher, Director, Federal Bureau of Investigation "Hudson Institute, Video Event: China's Attempt to Influence U.S. Institutions" Washington, D.C. July 7, 2020, (https://www.fbi.gov/news/speeches/the-threat-posed-by-the-chinese-government-and-the-chinese-communist-party-to-the-economic-and-national-security-of-the-united-states)

6.      Plaintiff also brings this lawsuit against Defendants for violations of California's Unfair Competition Law (UCL) pursuant to California Business and Professions Code § 17200, *et. seq.*, and California's False Advertising Law (FAL) pursuant to California Business and Professions Code § 17500, *et. seq.*  and seeks restitution of all monies owed and taken from Plaintiff as a result of Defendants' violations, as well as a permanent injunction against Defendants to prohibit any further violations and wrongful conduct.  Plaintiff also seeks damages for Defendants' unlawful acts in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) under 18 U.S.C. § 1962 *et seq.*

7.      Specifically, Defendants are engaged in illegal aiding and abetting of the unauthorized practice of law, as well as various other acts which violate the ethical rules which govern the legal profession, in a scheme to defraud unsuspecting and unknowing clients to retain their legal services.  This illicit activity has significantly harmed Plaintiff by, in at least one example, causing a drop in clients that otherwise would have been represented by Plaintiff's law firm absent Defendants' misconduct.

8.      In furtherance of their efforts to deceive, Defendants utilize a wide variety of unlawful acts to conceal and hide the impropriety of their actions.  Indeed, this case is premised upon a simple yet disturbing fact, that is, that YK Law LLP is an illegitimate law firm owned and controlled by non-lawyers.

## II.    PARTIES

9.      Plaintiff Edward Chen is, and at all times relevant herein was, an individual residing in the State of California and within this judicial district.

10.     Defendant YK LAW LLP, is, and at all times relevant herein was, a New York limited liability partnership invalidly existing and formed under the laws the of the State of New York.  Upon information and belief, Plaintiff alleges that Defendant YK LAW LLP was improperly formed and therefore invalidly existing as it is a New York law firm consisting of non-lawyer partners, namely, Defendant YONGYUAN LI.  Upon further information and belief, the Firm was originally formed under

the name MEI & WEINER, LLP.

11.     Defendant YONGYUAN LI a/k/a/ HENRY LI ("LI") is, and at all times relevant herein was, an individual citizen of the People's Republic of China residing in the State of California within this judicial district.

12.     Plaintiff is informed, believes, and thereon alleges that Defendant LI was, at all relevant times, and remains, a "co-managing partner" of the Firm or otherwise holds a partnership interest in equity of the Firm.  Further, Plaintiff is informed, believes, and thereon alleges that Defendant LI's status as a "co-managing partner" of the Firm is purposefully hidden from the public so as to not alert the same to the impropriety of a non-US licensed attorney, such as Defendant LI, having a partnership interest in a U.S. based law firm.

13.     Defendant JESSE JULES WEINER ("WEINER") is, and at all times relevant herein was, an individual citizen residing in the State of New York. Notably, Defendant Weiner holds himself out to be a "co-managing partner" of the Firm, yet there is no indication on the firm's website as to any other individual who shares the management responsibilities with Defendant Weiner.

14.     Defendant XIANGRONG MEI ("MEI") is, and at all times relevant herein was, an individual citizen of the People's Republic of China residing therein.

15.     Defendant YANG LIN ("LIN") is, and at all times relevant herein was, an individual citizen of the People's Republic of China residing therein.

16.     Defendant TANG CHAN a/k/a/ LINDA TANG ("TANG") is, and at all times relevant herein was, an individual citizen of the People's Republic of China residing in the State of California within this judicial district.

17.     Defendant SCOTT KALIKO ("KALIKO") is, and at all times relevant herein was, an individual citizen residing in the state of New Jersey.

18.     Defendant YEN MING LIAO a/k/a/ IAN LIAO ("LIAO") is, and at all times relevant herein was, an individual citizen residing in the State of California and within this judicial district.

19.     Defendant JIANNAN ZHANG ("ZHANG") is, and at all times relevant herein was, an individual citizen residing in the state of Texas.

20.     Defendant JULIAN HAFFNER ("HAFFNER") is, and at all times relevant herein was, an individual citizen residing in the state of Maryland.

21.     Plaintiff is informed, believes, and thereon alleges that at all relevant times mentioned herein, all Defendants, and each of them, were the officers, directors, brokers, agents, contractors, advisors, servants, partners, joint ventures, employees, and/or co-conspirators of their Co-Defendants and were acting within the scope of their authority as such agents, contractors, advisors, servants, partners, joint venturers, and employees with the permission and consent of their Co-Defendants.

22.     The identities and capacities of Defendants DOES 1 through 10 are presently unknown to Plaintiff, and on this basis, Plaintiff sues these defendants by fictitious names. Plaintiff will amend the complaint to substitute the true names and capacities of the DOE Defendants when they are ascertained. Plaintiff is informed, believes, and thereon alleges that DOES 1 through 10 are, and were at all times relevant to this action, employees and/or agents of Defendants and are responsible for the acts and omissions complained of herein.

### III.     JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331 based upon Plaintiff's claims which arise under federal law, and particularly pursuant to 18 U.S.C. § 1964 *et seq.*

24.     This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because all of the claims alleged herein form part of the same case or controversy.

25.     This Court has both specific and general personal jurisdiction over the named Defendants

because each of the named Defendants maintains minimum contacts with the United States, this judicial district, and this state.  Each of the Defendants purposefully availed themselves of the laws of this state by conducting a substantial amount of its business in this state, including the maintenance of several office locations and workspaces within this state, and particularly within this judicial district.

26.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## IV.     FACTUAL ALLEGATIONS

**Wrongful Termination of Plaintiff**

27.     In September 2020, Plaintiff joined the firm as a "Senior Counsel" pursuant to an offer of employment agreement that serves as the basis for this case.  A true and correct copy of this agreement is included herewith as **"Exhibit A".**

28.     Under the agreement, the term of Plaintiff's employment with the firm was to extend through December 31, 2021 with a change in position and title to a "contract partner" beginning on January 1, 2021.

29.     Plaintiff's compensation was to be determined by what is more commonly known as an "eat-what-you-kill"-type compensation arrangement, wherein Plaintiff would receive a revenue draw equaling 30% of the total cash receipts collected from matters originated by Plaintiff, 35% of the total cash receipts collected by Plaintiff working as a timekeeper, and 20% of the time billed by associates and paralegals while working under the direct supervision of Plaintiff.

30.     Section 13 of the agreement provided the terms and mechanisms for termination of the agreement, which is of key importance here given the Firm's failed attempt to terminate Plaintiff and the named Defendant's inability to recognize the fact that Plaintiff is not an employee of the Firm.

31.     Given the clear language and terms of the parties' agreement, termination of such

agreement was to be effectuated by and pursuant to section 13 only.  Yet despite this clear and unequivocal language, Defendants breached the agreement by failing to provide any notice required by the agreement and by subsequently refusing to act in accordance with the terms of the agreement.

32.     On or around November 16, 2021, Defendant WEINER met with Plaintiff and attempted to terminate Plaintiff's employment with the firm.  During this meeting, Plaintiff advised Defendant WEINER that such attempted termination was improper and in violation of the parties' agreement. Plaintiff further suggested that the Firm prepare a notice of termination of the agreement and that Plaintiff would be willing to waive the written notice requirements pursuant to the parties' agreement.  Defendant WEINER did not agree to this and wrongfully and unreasonably doubled down on the position that Plaintiff could be "terminated" at-will as an employee of the Firm.

33.     Defendant WEINER's actions and beliefs were clearly not rooted in any law, nor does it appear that the Firm or any of the named Defendants had any knowledge or ability to comprehend what exactly it was that they were attempting to do.  This is clearly evident by the fact that even if Defendants purported "at-will" termination of Plaintiff's "employment" with the Firm were valid, Defendants failed to comply with their legal and statutory obligations to provide Plaintiff with a final paycheck constituting all unpaid wages and other compensation.  Indeed, Defendants did not provide any such payment despite having allegedly terminated Plaintiff's employment with the Firm.

34.     At the same meeting, Plaintiff posited the question to Defendant WEINER that if it were an actual termination, then Plaintiff would clearly be entitled to a final paycheck consisting of unpaid wages and compensation.  Defendant WEINER was unable to provide such, claiming that certain "deductions" would need to be taken into account prior to issuance of such final paycheck to Plaintiff.

35.     To date, Defendants have failed to remit any such final paycheck or final payment to Plaintiff.

36.     Shortly after the meeting, Plaintiff's access to the firm's e-mail accounts and the firm's case management program were shut off.  Defendants failed to abide by any of the terms of the parties' agreement concerning termination of Plaintiff's independent contractor's agreement with the Firm.  Specifically, Defendants willfully and unjustifiably failed to abide by Section 13 of the offer letter that requires 30 days written notice to terminate the parties' agreement.

37.     By abruptly cutting off access to Plaintiff to the firm's e-mails and other resources, Defendants' maliciously intended to cause harm and damage to Plaintiff, and Plaintiff was not afforded any of the basic partnership courtesies and any sense of basic decency in the handling of a partner withdrawal from the Firm.

38.     More egregiously, Defendants' disparate treatment of Plaintiff by the purported termination is vastly different than Defendants' treatment of similar partners with similar contracts to Plaintiff.  As an example, one white, straight male partner that experienced similar issues as Plaintiff and was ultimately asked to leave the Firm was permitted the full 30 days' notice period prior to that partner's departure of the firm.

39.     Defendants' unlawful conduct was engaged in and/or ratified by managing agents of Defendants, in whom Plaintiff placed his fully justified, good faith trust in.  Defendants acted in a deliberate, malicious, cold, callous, deceptive, oppressive, and intentionally harmful manner in order to injure and cause damage to Plaintiff with a callous disregard for Plaintiff's right to be free from discrimination and retaliation in the workplace.

40.     Defendants' purported termination of Plaintiff's employment and outrageous and discriminatory conduct towards Plaintiff has irreparably harmed and disrupted Plaintiff's life and career.  As a result of Defendants' unlawful conduct and the actions as alleged herein, Plaintiff has and continues to suffer from significant emotional distress.

41.     As a consequence of Defendants' breach of the employment agreement by, among other things, failing to provide the requisite notice of termination of said agreement, failure to pay all monies due to Plaintiff pursuant to the employment agreement, and for the wrongful acts as alleged herein, Plaintiff has been harmed and damaged in an amount to be proven at trial.

**Defamatory Statements Made Regarding Plaintiff**

42.     Plaintiff is informed and believes and hereupon alleges that Defendants' have acted with a reckless disregard to Plaintiff's reputation as an attorney, by making false and defamatory statements regarding Plaintiff's performance as an attorney to individuals both inside and outside of the Firm.

43.     Since Plaintiff's departure from the firm, Plaintiff is informed, believes, and hereupon alleges that Plaintiff's firm e-mails were directed to Defendant TANG.

44.     Plaintiff is informed, believes, and hereupon alleges that Defendant TANG has made, and continue to make false defamatory statements regarding Plaintiff to Plaintiff's clients and other firm clients in an effort to cause irreparable harm to Plaintiff's reputation as an attorney.

45.     Specifically, Plaintiff is informed and believes and hereupon alleges that Defendants, particularly Defendant LI, engaged in the conduct of repeatedly making false and defamatory statements to members of the legal community, both inside and outside the Firm, concerning Plaintiff's job performance and the circumstances of Plaintiff's purported termination, including, *inter alia*, express and implied accusations relating to Plaintiff's competence in handling matters where Plaintiff was lead attorney, and unsubstantiated comments regarding Plaintiff's alleged poor performance.  These and similar false statements published by Defendant LI and the other named Defendants expressly and impliedly asserted that Plaintiff is and/or was unprofessional and unsuccessful as an attorney and partner of the Firm.  These false and defamatory statements were unsolicited, untrue, and made with actual malice and the intent to cause reputational harm and did indeed cause such harm to Plaintiff.

46.     In addition to the false, misleading, and defamatory statements made by Defendants, Plaintiff has been harmed by the substantial and severe invasion of privacy and public disclosure of private facts that Defendants have committed. Plaintiff is informed, believes, and hereupon alleges that Defendants, namely Defendant LI, acted maliciously and with willful disregard of Plaintiff's right to privacy by routinely opening private mail addressed privately to Plaintiff. Defendant LI and the named Defendants did so in an attempt to obtain private facts about Plaintiff that Defendants knew would cause harm to Plaintiff should such facts have been disclosed to the public. Regardless, Defendants acted in conscious disregard to Plaintiff's privacy rights in an attempt to attack Plaintiff's reputation and cause significant harm to Plaintiff.

47.     Plaintiff is further informed, believes, and hereupon alleges that Defendant WEINER and Defendant LI have made defamatory statements to both the New York and California state bars in response to Plaintiff's allegations and complaints regarding Defendants' misconduct.

**The Chinese Communist Party's Influence and Control Over Defendants' Motives and Actions**

48.     In the months following Plaintiff's departure from the firm, Plaintiff's suspicions regarding the non-lawyer ownership of YK Law LLP were largely confirmed. Plaintiff also began to uncover additional facts which quickly painted a broader and clearer picture of Defendants fraudulent scheme.

49.     Specifically, Defendants fraudulent scheme involves the aiding and betting of the unauthorized practice of law by Defendant LI. Defendants utilize and rely upon their so-called connections with their foreign-Chinese counterparts, the Yingke Law Firm, and strongly market their apparent ability to service Chinese clients and their legal matters in the United States.

50.     The tactics and methods used by Defendants to further their scheme bears striking similarities to those employed by the Chinese Communist Party to govern and impose its communist rules. It should come of no surprise that the CCP seeks to undermine U.S. and Western influence and the

influence of individual freedom and liberty, liberal democracy, free market economy, human rights, and human dignity of all.

51.     While China currently remains focused on the furtherance of its communistic goals in the science, technology, engineering, and mathematics (STEM) fields, the threats posed by the CCP also extend to the very bedrock on which the United States is built upon, that is – the rule of law.  The FBI has produced a number of resources which outline in detail the various methods and abusive tactics utilized by the CCP.  **See Exhibit B.**

52.     Plaintiff is informed, believes, and hereupon alleges that Defendant YK Law LLP, while purporting to exist as a legitimate U.S. law firm, is inextricably tied to its foreign-Chinese counterpart law firm, the Yingke Law Firm.  Such impropriety is due to the fact that the Chinese Communist Party is directly involved in, and or actual owns a part of the Yingke Law Firm.

53.     Within China, every institution — public, private, non-profit, or even social clubs — can have an internal Chinese Communist Party cell. A Party cell (or Party organization) is a small committee or group of CCP members within a given organization. According to the Chinese Communist Party constitution, any organization with three or more CCP members should establish a Party cell.  Members meet regularly to study CCP-approved political theory and may engage in other activities as directed by Party offices.

54.     The Chinese Communist Party constitution gives these cells the broad responsibility of acting as a communication bridge between the company they are affiliated with and the Party. Other responsibilities include party recruitment, educating Party members on Marxist theory, and reporting illegal activities observed.

55.     Defendants' allegiance to the CCP is no secret and is, in fact, laid out in public to display. Indeed, the Yingke Law Firm prominently shows on a "speech" on its website made by Defendant

XIANGRONG MEI and addressed to law firm staff.



Do not forget the original intention, the people's lawyers are for the people

——New Year's speech from the director of Yingke Law Firm in 2022

Distinguished leaders, friends, dear Yingke family:

happy New Year everyone!

The bell of 2022 has been struck, summing up the past and looking forward to the future. In the past year, I would like to thank leaders at all levels for their love and concern, our customers for their trust and support, and more than 17,000 Yingke people for their hard work!

2021 is a landmark year in the history of the party and the country. The 100th anniversary of the Communist Party of China, the intersection of the "two hundred years" history, the implementation of the "14th Five-Year Plan", and the new journey of building a socialist modern country in an all-round way are also the 20th anniversary of the establishment of Yingke. Over the past 20 years, under the leadership of the party, Yingke people have forged ahead, pioneered and innovated, and achieved fruitful

---

[2] https://www.yingkelawyer.com/ykjs/zrzc.html (Translations by Google) (last accessed Jun. 15, 2022).

56.     Plaintiff is informed, believes, and hereupon alleges that Defendants are either actual members of the Chinese Communist Party themselves, or are subject to the control of the CCP either directly or indirectly, and that Defendants engage in the unlawful activities as alleged herein in accordance with CCP policy and ideology.  Plaintiff is further informed, believes, and hereupon alleges that the Yingke Law Firm consists of at least 3,700 members of the Chinese Communist Party.

57.     Defendant XIANGRONG MEI's apparent reverence for the Chinese Communist Party is an understatement, as he lays tribute to the CCP in the opening lines.  Defendant XIANGRONG MEI continues by stating that "[a]s Yingke lawyers, we will consciously implement Xi Jinping's thought on the rule of law in the whole process and all aspects of lawyers' work."[3]

58.     Upon admission to the New York bar, newly minted attorneys must swear and take the oath that "I will support the Constitution of the United States, and the Constitution of the State of New York, and that I will faithfully discharge the duties of the office of attorney and counselor-at-law."  What does it say, then, that not one but many lawyers within a U.S. law firm have already pledged their allegiance to a foreign country, let alone a communist country led by the CCP?

59.     While the issues that arise when non-lawyer CCP members are permitted to own and control U.S. law firms or direct the activities of U.S.-licensed attorneys are issues that are likely best addressed by U.S. intelligence organizations like the FBI and corrected through the efforts of U.S. lawmakers, this action does seek legal remedy for improper and unlawful actions taken by Defendants as alleged herein.

/ / /

/ / /

---

[3] *Id.*

**Defendants' Unlawful Scheme to Defraud by Aiding and Abetting the Unauthorized Practice of Law and Additional Predicate Acts in Furtherance of Defendants' RICO Conspiracy**

60.     Pursuant to 18 U.S.C. § 1957, "[w]hen in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b)"

61.     18 U.S.C. § 1957(b) provides, in relevant part, that " the punishment for an offense under this section is a fine under title 18, United States Code, or imprisonment for not more than ten years or both."

62.     California Penal Code § 532 provides that "(a) [e]very person who knowingly and designedly, by any false or fraudulent representation or pretense, defrauds any other person of money, labor, or property, whether real or personal, or who causes or procures others to report falsely of his or her wealth or mercantile character, and by thus imposing upon any person obtains credit, and thereby fraudulently gets possession of money or property, or obtains the labor or service of another, is punishable in the same manner and to the same extent as for larceny of the money or property so obtained."

63.     California Business and Professions Code § 6125 provides that "[n]o person shall practice law in California unless the person is an active licensee of the State Bar."

64.     California Business and Professions Code § 6126, subsection (a) provides, in relevant part, that "[a]ny person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active licensee of the State Bar, or otherwise authorized pursuant to statute or court rule to practice law in this state at the time of doing so, is guilty of a misdemeanor punishable by up to one year in a county jail or by a fine of up to one thousand dollars ($1,000), or by both that fine and imprisonment."

65.     California Business and Professions Code § 16240 provides that, "[e]very person who practices, offers to practice, or advertises any business, trade, profession, occupation, or calling, or who uses any title, sign, initials, card, or device to indicate that he or she is qualified to practice any business, trade, profession, occupation, or calling for which a license, registration, or certificate is required by any law of this state, without holding a current and valid license, registration, or certificate as prescribed by law, is guilty of a misdemeanor."

66.     Rule 5.5(b) of the California Rules of Professional Conduct provides that "[a] lawyer who is not admitted to practice law in California shall not:

> (1) …establish or maintain a resident office or other systematic or continuous presence in California for the practice of law; or
>
> (2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in California."

67.     Rule 5.4(a) of the California Rules of Professional Conduct provides that "[a] lawyer or law firm shall not share legal fees directly or indirectly with a nonlawyer or with an organization that is not authorized to practice law."

68.     Rule 5.5 of the New York Rules of Professional Conduct provides that:

> "(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction.
>
> (b) A lawyer shall not aid a lawyer in the unauthorized practice of law."

69.     Rule 5.4(b) of the New York Rules of Professional Conduct provides that: "[a] lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law."

70.     Plaintiff is informed, believes, and hereupon alleges that each of the Defendants acted knowingly with the intent to defraud Plaintiff and the general public by aiding and abetting the

unauthorized practice of law by Defendant LI, in violation of the aforementioned laws.

71. Plaintiff is informed, believes, and hereupon alleges that each Defendant engaged in a conspiracy by implicitly or explicitly agreeing to a common design to commit a wrong and aided and abetted in the operation of an improperly existing U.S. law firm that is controlled and owned by non-lawyers.

72. On or around September 27, 2019, Defendant MEI and Defendant WEINER caused for a Notice of Registration of MEI & WEINER LLP to be filed with the State of New York Department of State.

73. On or around October 7, 2019, a certificate changing the name of MEI & WEINER LLP to YK LAW LLP was filed with the State of New York Department of State.

74. On or around December 19, 2019, a certificate of Amendment was filed, and Plaintiff is informed, believes, and hereupon alleges that said amendment was executed in order to include non-lawyer Defendant LI as a general partner.

75. Plaintiff is informed, believes, and hereupon alleges that Defendant LI has never been licensed to practice by any state bar within the United States, however, Defendant LI and each of the named Defendants act with conscious disregard of this fact.

76. Indeed, Defendants LI, LIAO, and WEINER represented to Plaintiff that Defendant LI's title and role with the firm was that of "co-managing partner" as evidenced by e-mail communications between Plaintiff and Defendants during Plaintiff's initial recruitment process. **See Exhibit C**.

77. Additionally, Defendant LI is referred to countlessly in a variety of firm marketing materials and web postings as being a combination of either the "managing partner", "co-managing partner", or "founder" of Defendant YK Law LLP. Several examples of this include but are not limited to certain firm marketing materials and brochures located on the Defendants' firm website as follows:



https://www.yklaw.us › team › henry-li

**Henry Li - YK Law**

Henry (**Yongyuan**) **Li** is co-founder and Chief Executive Officer of **YK Law** LLP. He oversees the firm's financial and operational functions, including human ...

★★★★★ Rating: 5 · 1 review

https://www.yklaw.us › team › 李永源

**李永源 - YK Law**

**Henry Li** is the co-founder, co-managing partner of **YK Law** LLP and head its China Practice. He is also a partner of Beijing Yingke **Law** Firm, the largest **law** firm ...

★★★★★ Rating: 5 · 1 review

Jesse Weiner, managing partner of YK Law and leading entertainment law attorney, said: "I have represented YK Law in the U.S. since 2012. In 2019, Mr.Li and I established YK Law in New York and set up a concurrent office in Los Angeles. Our Los Angeles and Irvine offices, based in Southern California, provide global, comprehensive, and one-stop commercial legal services for our clients. We look forward to continuing our growth in Southern California and providing quality legal and business services to support more of our clients.

---

[4] (http://www.yingkeinternational.com/uncategorized/yk-law-los-angeles-celebrated-the-move-to-the-new-location-and-thanksgiving-day-appreciation-reception-successfully-held) (last visited June 15, 2022).





78.     Plaintiff is informed, believes, and hereupon alleges that each of the Defendants had knowledge of the fact that Defendant LI is not, nor has he ever been, licensed to practice law by any bar association within any U.S. jurisdiction, yet each of the Defendants actively engaged in the solicitation of clients by concealing the fact that Defendant LI is not a U.S.-licensed attorney.

79.     Defendants benefited from the aiding and abetting of the unauthorized practice of law, especially where Defendant YK Law LLP, as a purported U.S. law firm, marketed heavily to individuals and business primarily of Chinese descent.  Defendants sought to wrongfully gain an economic advantage and unlawful competitive advantage in furtherance of their efforts to solicit potential clients of Chinese background and descent.

80.     Plaintiff is informed, believes, and hereupon alleges that various clients of the firm were, in fact, tricked and defrauded by Defendant LI'S unauthorized practice of law and were duped by Defendant LI and other named Defendants' efforts to conceal or otherwise fail to disclose the fact that Defendant LI is not a U.S.-licensed attorney.

81.     Plaintiff is informed, believes, and hereupon alleges that at least two prior firm clients are actively seeking damages and compensation from the firm arising directly out of Defendant LI's unauthorized practice of law.

82.     Defendants utilized illegal practices in order to obtain an unfair competitive advantage in the same marketplace as Plaintiff.  Given Defendants' unjustified refusal to compensate Plaintiff and withholding of all legal fees that are owing and due to Plaintiff for Plaintiff's work, Plaintiff is informed, believes, and hereupon alleges that Defendants have been unjustly enriched with Plaintiff's funds. Plaintiff is thereby seeking restitution and disgorgement of all profits improperly withheld by Defendants and for an injunction to stop the wrongdoing and further aiding and abetting of the unauthorized practice of law by Defendants.

**Defendant YONGYUAN LI a/k/a/ HENRY LI's Role in Defendants' Fraudulent RICO Scheme**

83.      Plaintiff is informed, believes, and hereupon alleges that Defendant YONGYUAN LI a/k/a/ HENRY LI asserts primary control and ownership in Defendants' firm in violation of various ethics rules prohibiting non-lawyer ownership of U.S. law firms.

84.      Defendant LI engaged in numerous activities constituting the unauthorized practice of law to the detriment of Plaintiff and firm clients.

85.      Defendant LI falsely misrepresented his status and intended to induce Plaintiff and firm clients into believing that Defendant LI was a U.S. licensed attorney despite never actually having been admitted to practice law by any state bar within the United States.

86.      Defendant LI improperly received a percentage share of legal fees from client matters in violation of the relevant ethical rules prohibiting fee-sharing with non-lawyers.

87.      Upon further information and belief, Plaintiff hereupon alleges that Defendant LI is a member of the Chinese Communist Party and has pledged allegiance to the CCP by taking the CCP's Party Admission Oath.

**Defendant CHAN TANG a/k/a/ LINDA TANG's Role in Defendants' Fraudulent RICO Scheme**

88.      Plaintiff is informed, believes, and hereupon alleges that Defendant CHAN TANG a/k/a/ LINDA TANG participated in Defendants' fraudulent scheme by and through her employment as "Director of Operations" for the firm.

89.      Defendant TANG is married to Defendant LI, and Plaintiff is informed, believes, and hereupon alleges that Defendant TANG utilized her position both as Defendant LI's spouse and as "Director of Operations" to funnel funds and illicit proceeds gained from various client matters directly to Defendant LI and the other named Defendants.

90.      Plaintiff is further informed, believes, and hereupon alleges that Defendant TANG is an

unauthorized signatory to the firm's client trust accounts and/or maintains unlawful control over the same.

91.     Upon further information and belief, Plaintiff hereupon alleges that Defendant TANG is a member of the Chinese Communist Party and has pledged allegiance to the CCP by taking the CCP's Party Admission Oath.

**Defendant XIANGRONG MEI's Role in Defendants' Fraudulent RICO Scheme**

92.     Plaintiff is informed, believes, and hereupon alleges that Defendant XIANGRONG MEI participates in Defendants' fraudulent scheme by and through his ownership of Defendants' law firm. Defendant MEI's actions violate the relevant ethical rules prohibiting any partnership with non-lawyers for law firms.

93.     Plaintiff is further informed, believes, and hereupon alleges that Defendant MEI's role in Defendants' scheme began by Defendant MEI's initial investment and capital contributions towards the establishment of Defendants' law firm.

94.     Plaintiff is also informed, believes, and hereupon alleges that Defendant MEI's acts of establishing a U.S. law firm while remaining under the direct control and allegiance to the Chinese Communist Party are improper and unlawful to the extent that there exists an uncurable conflict of interest between the two.

95.     Upon further information and belief, Plaintiff hereupon alleges that Defendant MEI is a member of the Chinese Communist Party and has pledged allegiance to the CCP by taking the CCP's Party Admission Oath.

**Defendant YANG LIN a/k/a/ LINDA YANG's Role in Defendants' Fraudulent RICO Scheme**

96.     Plaintiff is informed, believes, and hereupon alleges that Defendant YANG LIN a/k/a/ LINDA YANG participates in Defendants' fraudulent scheme by and through her ownership of Defendants' law firm.

97.     Plaintiff is further informed, believes, and hereupon alleges that Defendant YANG's role in Defendants' scheme began by and through her initial investment and capital contributions towards the establishment of Defendants' law firm.

98.     Plaintiff is also informed, believes, that Defendant YANG receives a portion of profits derived from Defendants' racketeering and fraudulent activities.

99.     Upon further information and belief, Plaintiff hereupon alleges that Defendant YANG is a member of the Chinese Communist Party and has pledged allegiance to the CCP by taking the CCP's Party Admission Oath.

**Defendant JESSE WEINER's Role in Defendants' Fraudulent RICO Scheme**

100.    Plaintiff is informed, believes, and hereupon alleges that Defendant JESSE WEINER, acting with knowledge of Defendant LI's status as a non-lawyer and Defendant LI's improper ownership of Defendant YK Law LLP, submitted and caused for the registration of Defendant YK Law LLP in the state of New York.

101.    Plaintiff is informed, believes, and hereupon alleges that Defendant WEINER has improperly formed a partnership with a non-lawyer in direct contravention of the relevant ethical rules governing Defendant WEINER as a member of both the California and New York State Bars.

102.    Plaintiff is further informed, believes, and hereupon alleges that Defendant WEINER actively concealed the wrongdoing and fraudulently misrepresented facts regarding Defendant LI's involvement in the firm.

103.    Plaintiff is also informed, believes, and hereupon alleges that Defendant WEINER has committed multiple ethical violations which include, but are not limited to, improper fee sharing with non-lawyers and the aiding and abetting of the unauthorized practice of law.

104.    Plaintiff is informed, believes, and hereupon alleges that Defendant WEINER serves as the

front person for Defendants' fraud, and that Defendant WEINER acts under the direct control of Defendant LI, and is therefore incapable of exercising the professional independence and judgment mandated by the relevant ethical rules of professional conduct given Defendant WEINER's status as a New York and California licensed attorney.

**Defendant SCOTT KALIKO'S Role in Defendants' Fraudulent RICO Scheme**

105.    Plaintiff is informed, believes, and hereupon alleges that Defendant SCOTT KALIKO, acting with knowledge of Defendant LI's status as a non-lawyer and Defendant LI's improper ownership of Defendant YK Law LLP, submitted and caused for the registration of Defendant YK Law LLP in the state of New Jersey.

106.    Plaintiff is informed, believes, and hereupon alleges that Defendant KALIKO has improperly formed a partnership with a non-lawyer in direct contravention of the relevant ethical rules governing Defendant KALIKO as a licensed member of the New Jersey State Bar.

107.    Plaintiff is further informed, believes, and hereupon alleges that said ethical violations include, but are not limited to, improper fee sharing with non-lawyers and the aiding and abetting of the unauthorized practice of law.

108.    Plaintiff is further informed, believes, and hereupon alleges that Defendant KALIKO's registration of Defendant YK Law LLP as a foreign limited liability partnership was made with intent to further increase, grow, and perpetuate Defendants' fraudulent scheme.

109.    Plaintiff is also informed, believes, and hereupon alleges that Defendant KALIKO fraudulent misrepresented facts regarding the firm's ownership or otherwise acted intently and knowingly to disregard the impropriety of Defendant LI's ownership of the firm as a non-lawyer to further Defendants' scheme and overall fraud.  Defendant KALIKO's actions constitute an explicit effort to further aid and abet Defendant LI's unauthorized practice of law.

**Defendant YEN MING LIAO a/k/a/ IAN LIAO's Role in Defendants' Fraudulent RICO Scheme**

110.    Plaintiff is informed, believes, and hereupon alleges that Defendant YEN MING LIAO has improperly formed a partnership with a non-lawyer in direct contravention of the relevant ethical rules governing Defendant LIAO as a licensed member of the California State Bar.

111.    Plaintiff is further informed, believes, and hereupon alleges that said ethical violations include, but are not limited to, improper fee sharing with non-lawyers and the aiding and abetting of the unauthorized practice of law.

112.    Plaintiff is informed, believes, and hereupon alleges that Defendant LIAO acted intently and with conscious in disregard of Defendant LI's ownership of the firm as a non-lawyer to further Defendants' scheme and overall fraud.

113.    Plaintiff is further informed, believes, and hereupon alleges that Defendant LIAO acted to perpetuate and further Defendants' scheme by establishing a branch office of Defendant YK Law LLP in Irvine, California.

114.    Plaintiff is also informed, believes, and hereupon alleges that Defendant LIAO was at all times aware of Defendant LI's status as a non-lawyer, yet despite such knowledge, joined Defendant YK Law LLP as an equity partner in violation of the relevant rules of professional conduct governing such.

115.    Plaintiff is informed, believes, and hereupon alleges that Defendant LIAO made multiple fraudulent misrepresentations to Plaintiff, or otherwise actively concealed the fact of the firm's inextricable ties to the CCP.

**Defendant JIANNAN ZHANG's Role in Defendants' Fraudulent RICO Scheme**

116.    Plaintiff is informed, believes, and hereupon alleges that Defendant JIANNAN ZHANG has improperly formed a partnership with a non-lawyer in direct contravention of the relevant ethical rules.

117.    Plaintiff is further informed, believes, and hereupon alleges that said ethical violations

include, but are not limited to, improper fee sharing with non-lawyers and the aiding and abetting of the unauthorized practice of law.

118.    Plaintiff is informed, believes, and hereupon alleges that Defendant ZHANG took acts to further Defendants' scheme by establishing a branch office of the firm in the state of Texas.

119.    Plaintiff is further informed, believes, and hereupon alleges that Defendant ZHANG acted with conscious disregard of the impropriety of the fact that the firm was made up of non-lawyer ownership in contravention of the relevant ethical rules.

**Defendant JULIAN HAFFNER's Role in Defendants' Fraudulent RICO Scheme**

120.    Plaintiff is informed, believes, and hereupon alleges that Defendant JULIAN HAFFNER has improperly formed a partnership with a non-lawyer in direct contravention of the relevant ethical rules.

121.    Plaintiff is further informed, believes, and hereupon alleges that Defendant HAFFNER acted intently and with conscious disregard for the fact that Defendant YK Law LLP is not a validly existing law firm as it consists of non-lawyer ownership, and despite having such knowledge, proceeded to further Defendants' fraudulent scheme by causing for and submitting the registration of a branch office of Defendant YK Law LLP in the state of Maryland.

**V.    CLAIMS FOR RELIEF**

**COUNT 1**

**BREACH OF CONTRACT**

**(Against Defendant YK LAW LLP)**

122.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

123.    Plaintiff entered into a written contract with the Firm, which includes each and every one of the named Defendants.

124.     In order to terminate the agreement, written notice in advance of 30 days is required. Despite this, Defendants attempted to terminate Plaintiff as an "employee" of the firm under a mistaken belief that Plaintiff could be terminated "at-will" as a result thereof.

125.     Defendants breached the terms of the agreement, specifically, in regard to the specified method for termination of the agreement.  Defendants attempt to cause the termination of Plaintiff was unjust and invalid pursuant to the terms of the agreement.

126.     In breach of the express terms of the contract, Defendants also failed its obligations under the contract by closing, suspending, or otherwise shutting off access to the Firm's resources, including e-mail, file system and documents, and case management software.

127.     Furthermore, Defendants' breach includes the failure to remit payment rightfully owed and due to Plaintiff under the terms of the agreement.  To date, Plaintiff has yet to receive payment from Defendants in an amount to be proven at trial, but well in excess of over $75,000.

128.     As a direct and proximate result of Defendants' breach of contract, Plaintiff has been damaged in an amount to be determined at trial.  More egregiously, Defendants' breaches have caused, and continue to cause damage to clients of the Firm as Plaintiff has been unable to tend to such matters as a result of Defendant's closure of Plaintiff's access to same.

**COUNT 2**

**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Against all Defendants)**

129.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

130.     Plaintiff's offer letter and written contract with Defendants is an enforceable contract under California law.  A covenant of good faith and fair dealing is implied in the agreements and contracts

entered into by and between Plaintiff and Defendants.

131.   The covenant of good faith and fair dealing required Defendants to fairly, honestly, and reasonably perform the terms and conditions of the offer letter and written contracts.

132.   Defendants breached the covenant of good faith and fair dealing with Plaintiff in several ways, including: (1) Defendants' refusal to pay Plaintiff's wages owed under the offer letter and written contracts; (2) Defendants' failure to provide administrative, secretarial, and associate attorney support to Plaintiff in accordance with the terms of the offer letter and written contracts; Defendants' attempt to terminate Plaintiff's employment by treating Plaintiff as an employee for purposes of "at-will" termination, despite the terms of the offer letter and written contracts that required and provided for a 30-day notice of termination of the offer letter and written contracts; and (4) Defendants' unjustified repudiation of the obligations under the offer letter and written contracts, despite having full knowledge and awareness of the applicable law, for reasons extraneous to the contracts, and for the purpose of frustrating Plaintiff's enjoyment and benefits derived from the offer letter and written contracts.

133.   As a proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiff has been damages, in that Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at trial.

## COUNT 3

## DEFAMATION

### (Against Defendants LI, WEINER, and TANG)

134.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

135.   Plaintiff is informed and believes Defendants by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited internal and

external publications of defamation, of and concerning Plaintiff, to third persons and to the community. These false and defamatory statements included express and implied accusations that Plaintiff performed poorly, exhibited unprofessional conduct, and committed errors in strategy or judgment for matters which Plaintiff was lead attorney on.

136.    While the precise dates of these publications are not currently known to Plaintiff, Plaintiff is informed and believes the publications started in or around June of 2021, for the improper purpose of finding a justification for Plaintiff's wrongful termination. These publications were outrageous, negligent, reckless, intentional, and maliciously published and republished by Defendant. Plaintiff is informed and believes that the negligent, reckless, and intentional publications by Defendant were and continue to be foreseeably published and republished by Defendant, its agents and employees, and recipients in the community. Plaintiff hereby seeks damages for these publications and all foreseeable republications discovered up to the time of trial.

137.    During the above-described timeframe, Defendants conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom Defendants published such defamatory statements are believed to include, but are not limited to, other partners, agents and employees of Defendants and the community, clients, all of whom are known to Defendant, but unknown at this time to Plaintiff.

138.    The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation. These publications included the following false and defamatory statements (in violation of California Civil Code §§ 45 and 46(3)(5)) with the meaning and/or substance that Plaintiff: exhibited unprofessional conduct or otherwise performed poorly as lead counsel on matters which Plaintiff

was handling. These and similar statements published by Defendants expressly and impliedly falsely assert that Plaintiff is an unprofessional, unsuccessful, and incompetent attorney.

139.    Plaintiff is informed, believes and fears that these false and *per se* defamatory statements will continue to be published by Defendants and will be foreseeably republished by its recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable republications, including his own compelled self-publication of these defamatory statements.

140.    The defamatory meaning of all of the above-described false and defamatory statements, and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendant, but unknown to Plaintiff at this time.

141.    None of Defendant's defamatory publications against Plaintiff referenced above are true.

142.    The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

143.    Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants, to cause further damage to Plaintiff's professional and personal reputation, to cause him to be fired, and to justify his firing.

144.    Each of these publications by Defendants were made with knowledge that no investigation

supported the unsubstantiated and obviously false statements. Defendants published these statements knowing them to be false, unsubstantiated by any reasonable investigation, and the product of hostile witnesses. These acts of publication were known by Defendants to be negligent to such a degree as to be reckless. In fact, not only did Defendants have no reasonable basis to believe these statements, but Defendants also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendants excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

145. The above complained-of publications by Defendants were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, employment and employability. Defendants published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect any Defendants from liability for any of these aforementioned publications or republications.

146. As a proximate result of the publication and republication of these defamatory statements by Defendants, Plaintiff has suffered injury to his personal, business, and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

147. Defendants committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of Defendants, their agents, and employees, herein alleged were known, ratified and approved by

Defendants. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants for these wanton, obnoxious, and despicable acts in an amount according to proof at time of trial.

<u>**COUNT 4**</u>

**ACCOUNTING**

**(Against All Defendants)**

148.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

149.    A relationship exists between Plaintiff and Defendants for which an accounting of the Firm's books and records is appropriate.

150.    Plaintiff is informed, believes, and based thereon alleges that the Firm has derived and received significant legal fees in which Plaintiff is contractually entitled to a share thereof.  Plaintiff is entitled to a full and accurate accounting of all proceeds generated from, by or in connection with the matters originated by Plaintiff, matters where Plaintiff was to derive a portion of fees for work conducted as lead attorney on various legal matters, and any and all other fees owed and due to Plaintiff in accordance with Plaintiff's employment agreement.

151.    The total amount of monies owing and due to Plaintiff is currently unknown and cannot reasonably be determined or ascertained without a full and complete accounting of the Firm's books and records.

152.    Plaintiff also prays for the Court to impose a constructive trust on all moneys wrongfully withheld by the Firm from Plaintiff.

/ / /

/ / /

/ / /

## COUNT 5

## VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW

## (CAL. BUS. & PROF. CODE § 17200 *et seq.*)

## (Against All Defendants)

153.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

154.    California's Unfair Competition Law ("UCL") defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

155.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation

156.    Defendants have violated the UCL by committing unlawful, unfair, and fraudulent business acts and practices by engaging in the aiding and abetting of the unauthorized practice of law, improper sharing of fees with non-lawyers, and or otherwise improperly partnering or forming a law firm partnership with non-lawyers in violations of the relevant rules of professional conduct that govern each named Defendant, and by engaging in the illicit and unlawful acts as alleged herein.

157.    Defendants' illegal practice of aiding and abetting the unauthorized practice of law was committed in order to obtain an unfair competitive advantage in the same marketplace as Plaintiff.

158.    As a result of Defendants' illegal practices and conduct, Plaintiff has been harmed by Defendants' improper withholding of monies owing and due to Plaintiff.

159.    Defendants have been unjustly enriched by monies that are rightfully due and owing to Plaintiff, and Defendants have received revenue to which they would not otherwise be entitled. Defendants have further improperly shared such revenue with non-lawyers in contravention of the relevant

ethical rules that prohibit the sharing of such.

160.    Defendants' unlawful business practices are likely to deceive members of the public, and such practices have harmed and continue to pose a threat of harm to the general public.

161.    Plaintiffs seeks restitution of all monies improperly withheld by Defendants and seeks entry of an injunction against Defendants prohibiting the unlawful business practices and conduct which amount to the unauthorized practice of law and acts as alleged herein.

## COUNT 6

## VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW

## (CAL. BUS. PROF. CODE § 17500 et seq.)

## (Against All Defendants)

162.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

163.    The California False Advertising Law (FAL) prohibits unfair, deceptive, untrue, or misleading communications and statements, including, but not limited to, false statements as to the nature of services to be provided.

164.    Defendants made or caused one another to make false and misleading representations to Plaintiffs, firm clients, potential clients, and members of the public concerning the professional licensure status of certain individuals employed by and acting within the firm.  Defendants knew that certain firm individuals, specifically, Defendant LI, is not a U.S. licensed attorney, yet falsely misrepresented or fraudulently concealed such fact.  Defendants routinely referenced and referred to Defendant LI in firm marketing materials as a "managing partner", "co-managing partner", "founder" of the law firm, and utilized similar terms to falsely advertise and misrepresent Defendant LI as being a licensed U.S. attorney despite the fact that Defendant LI has never been licensed as a U.S. attorney.

165.     Defendants' false representations and false advertising have caused harm to Plaintiff, firm clients, and members of the public whereby Defendants wrongfully and unlawfully obtained monies under such false pretense.

166.     Plaintiff requests that this Court enter an order causing Defendants to disgorge all monies unlawfully obtained by Defendants and an order enjoining Defendants from continuing to violate the UCL and FAL as discussed herein, or from doing so in the future.

**COUNT 7**

**CIVIL RICO (18 U.S.C. § 1961(a))**

**(Against All Defendants)**

167.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

168.     Plaintiffs and Defendants are all "persons" as the term is defined under 18 U.S.C. § 1961(3).

169.     Defendants, including all of their employees and agents, formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

170.     Defendants used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise.  Specifically, Defendants received income derived from clients of the firm and obtained said income and profits through the use of trickery and fraud, particularly, by engaging in unlawful and unfair business practices, aiding and abetting the unauthorized practice of law, amongst others, in a pattern of racketeering activity in an interstate enterprise.

171.     Defendants' racketeering activity as alleged above and herein constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

172.     As a direct and proximate result of Defendants' racketeering activities and violations of 18

U.S.C. § 1962(a), Plaintiff has been injured in their business and property in that Plaintiff has not received compensation for legal services provided and work done while employed with the firm, whereby Defendants used such improperly withheld funds to invest in furtherance of Defendants' racketeering activities.

173.    As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continue to suffer damages in an amount to be proven at trial.

174.    Pursuant to 18 U.S.C. § 1964(c), Defendants are jointly and severally liable to Plaintiff for three times the damages that Plaintiff has suffered, plus the costs of bringing this suit, including reasonable attorneys' fees.

## COUNT 8

## CIVIL RICO (18 U.S.C. § 1962(b))

## (Against All Defendants)

175.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

176.    Plaintiffs and Defendants are all "persons" as the term is defined under 18 U.S.C. § 1961(3).

177.    Defendants, including all of their employees and agents, formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in interstate and foreign commerce. Defendants racketeering activities and unlawful acts affect interstate commerce and foreign commerce to the extent that Defendants' conduct has harmed potential clients and the public both in the United States and overseas.

/ / /

/ / /

178.    Defendants, including all of their employees and agents, formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) and their activities as alleged herein affect interstate commerce.

179.    Defendants acquired and maintained, both directly and indirectly, interest and control of the enterprise which engaged in, and activities affected interstate and foreign commerce by forming the enterprise and operating said enterprise as a law firm purporting to be validly existing under New York law.  Defendants acquired actual ownership of the firm through receiving equity from the firm by joining in a partnership and as a partner of the firm.

180.    Defendants' violations of 18 U.S.C. § 1962(b) directly and proximately caused Plaintiff to suffer substantial injury because Defendants' pattern of racketeering activity and unlawful business practices have allowed Defendants to withhold Plaintiff's funds and have caused the diversion of potential clients that may have otherwise chosen to hire Plaintiff.

181.    Defendants coordinated with one another to implement and conceal the overall scheme. Each Defendant operated, managed and/or participated in the scheme, and Defendants worked together to execute the fraud.

182.    As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continue to suffer damages in an amount to be proven at trial.

183.    Pursuant to 18 U.S.C. § 1964(c), Defendants are jointly and severally liable to Plaintiff for three times the damages that Plaintiff has suffered, plus the costs of bringing this suit, including reasonable attorneys' fees.

/ / /

/ / /

/ / /

## COUNT 9

## CIVIL RICO (18 U.S.C. § 1962(c))

## (Against All Defendants)

184.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

185.    Defendants, including all of their employees and agents, formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

186.    Defendants agreed to and did conduct and participate in the conduct of the enterprises' affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.  Specifically, Defendants' scheme consists of an ongoing organization of a variety of legal "persons" that are associated for common and shared purposes, including but not limited to: (a) defraud potential clients by concealing the firm's improper ownership by non-lawyers; (b) aiding and abetting the unauthorized practice of law; (c) false misrepresentations as to the status of certain firm individuals so as to create an impression that said individuals were licensed to practice law in the United States in an effort to solicit potential clients and obtain an unfair business advantage; (d) engaging in activities to further the fraudulent scheme and to establish branch offices which served as an expansion and perpetuation of the fraud.

187.    Defendants coordinated with one another to implement and conceal the overall scheme. Each Defendant operated, managed and/or participated in the scheme, and Defendants worked together to execute the fraud.

188.    Each of the Defendants were either employed by the enterprise or associated with the enterprise by way of holding themselves out as either partners of the enterprise law firm, or actual holding equity in partnership in order to conduct and participate in the aforementioned racketeering activities and

unlawful conduct.

189.    As a direct and proximate result of Defendants' unlawful activity in violation of 18 U.S.C. § 1962(c), Plaintiff has suffered and continue to suffer damages in an amount to be proven at trial.

190.    Pursuant to 18 U.S.C. § 1964(c), Defendants are jointly and severally liable to Plaintiff for three times the damages that Plaintiff has suffered, plus the costs of bringing this suit, including reasonable attorneys' fees.

## COUNT 10

## CIVIL RICO (18 U.S.C. § 1962(d))

## (Against All Defendants)

191.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

192.    Defendants, including all of their employees and agents, formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4).

193.    Defendants conspired to violate each of the provisions of the civil RICO statutes in that each of the Defendants conspired to  engage in a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.  Specifically, Defendants' scheme consists of an ongoing organization of a variety of legal "persons" that are associated for common and shared purposes, including but not limited to: (a) defraud potential clients by concealing the firm's improper ownership by non-lawyers; (b) aiding and abetting the unauthorized practice of law; (c) false misrepresentations as to the status of certain firm individuals so as to create an impression that said individuals were licensed to practice law in the United States in an effort to solicit potential clients and obtain an unfair business advantage; (d) engaging in activities to further the fraudulent scheme and to establish branch offices which served as an expansion and perpetuation of the fraud.

194.    Defendants coordinated with one another to implement and conceal the overall scheme. Each Defendant operated, managed and/or participated in the scheme, and Defendants worked together to execute the fraud.

195.    As a direct and proximate result of Defendants' unlawful activity in violation of 18 U.S.C. § 1962(d), Plaintiff has suffered and continue to suffer damages in an amount to be proven at trial.

196.    Pursuant to 18 U.S.C. § 1964(c), Defendants are jointly and severally liable to Plaintiff for three times the damages that Plaintiff has suffered, plus the costs of bringing this suit, including reasonable attorneys' fees.

**PRAYER FOR RELIEF**

197.    WHEREFORE, Plaintiff prays for the requested relief as follows:

A.    For damages for breach of contract sufficient to restore to Plaintiff the bargained-for benefits of the contract;

B.    For compensatory damages including lost wages, earnings, retirement benefits, and other employee benefits; and all other sums of money, together with interest on these amounts at prevailing rates and according to proof;

C.    For general, special, and incidental damages and amounts for emotional and physical distress according to proof;

D.    For restitution of all profits gained, made, and improperly withheld by Defendants in accordance with and pursuant to California's UCL laws;

E.    For injunctive relief;

F.    For treble damages pursuant to 18 U.S.C. § 1964(c);

G.    For punitive damages in an amount to be determined at trial sufficient to punish, penalize and/or deter Defendants;

H.   For prejudgment interest and interest on the sum of damages awarded to the maximum extent permitted by law;

I.   For reasonable attorneys' fees and costs of suit herein incurred; and

J.   For such other and further relief as the Court deems proper and any such other or further relief as may be appropriate under federal or state law, or at equity.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.


Dated:  June 16, 2022              By:    */s/ Edward Chen*
                                          Edward Chen

                                          *Attorneys for Plaintiff*